(No. 5240—

ELAINE SCUDIERO, Administratrix of the Estate of RALPH SCUDIERO, Deceased; ELAINE SCUDIERO, Individually; and ELAINE SCUDIERO, Parent and Next of Friend of JANICE SCUDIERO, JOYCE SCUDIERO AND JUDITH SCUDIERO, Minors, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1969.*

JOHN T. MARTIN, Attorney for Claimants.

WILLIAM G. CLARK, Attorney General; GERALD S. GROBMAN and ARTHUR L. BERMAN, Assistant Attorneys General, for Respondent.

PERLIN, C.J.

Claimants seek recovery of damages arising out of an automobile accident on February 10, 1965 in which Ralph Scudiero, the husband of claimant, Elaine Scudiero, and the father of the other claimants, was killed, and the other claimants injured.

Claimants contend that the accident was caused by the negligence of respondent in that it carelessly maintained and failed to repair holes or defects in the highway, and failed to post adequate warning signs, when it knew or should have known of the existence of the holes or defects.

Before claimants may recover they must prove by a preponderance of the evidence (1) that respondent was negligent; (2) that the negligence was the proximate cause of the accident; (3) that claimants were free from contributory negligence; and, (4) damages.

Claimants introduced evidence, which established the following:

On February 10, 1965, Ralph Scudiero was driving his automobile on U.S. Route No. 20 in a westerly direction, about 10:25 P.M. Claimant, Elaine Scudiero, was riding in the front seat of the automobile, and the three Scudiero children, Janice, Joyce, and Judith, were riding in the rear. Elaine Scudiero testified that her husband was driving in the curb lane of the four lane highway at about 35 miles per hour. When the car reached the area in the road at or near Bill Bailey's Motor Sales, Inc., (19 West 326 Lake Street, Addison, Illinois) the left front wheel dropped into a hole, and the car swerved. The vehicle then went into the lane of traffic from the opposite direction, colliding with an eastbound car. Accord-

ing to claimant, after she felt the car going into the hole, her husband had his hand on the wheel at all times, and did not hit the brake hard. She further testified that the area where the car went out of control was at the west end of the Bailey car lot. After the collision, Mrs. Scudiero was taken in one ambulance with her husband, and her daughters were taken in another ambulance. Her husband was pronounced dead at the hospital.

About ten or twelve days after the accident, Mrs. Scudiero testified she returned to the spot in the road where the collision occurred, and saw an area of ruts running about 8 to 10 yards. Claimant stated that the last time her husband had traveled on the highway was Christmas, 1964. She herself had driven on the highway in question about a month before the accident, and had noticed ruts and holes. She further testified that the tires on the automobile were good, and it had snow tires at the time of the accident.

Janice Scudiero, age 16, the daughter of decedent and Elaine Scudiero, testified that she was riding as a passenger in the automobile in the rear seat on the left side of the car. She described the accident as follows: "We were going along, and then all of a sudden the car must have hit a rut, and we started to jump—well, joggle up and down. All of a sudden the car went out of control, and it started to swerve, and then we went into the other lane." She was taken to the hospital in an ambulance where she was treated for injuries. Janice also testified that the car swerved out of the lane of traffic twice before the impact.

Joyce Scudiero, age 13, testified that she was sitting in the middle of the rear seat, and her sister Judy was sleeping on her right. She stated: "We were driving,

and all of a sudden I felt like the car, well, went into this rut-like, and he was trying to get it out, so he couldn't, so the car started swinging—he must have somehow got it out, and we started to go into the other lane. Then we hit the car.'' She said that she had a cut on her leg, a bruise on her arm, a cut on her head and scratches all over her face. She testified she has completely recovered, and that she never saw a doctor after she left the hospital.

Judith Scudiero testified she was asleep at the time of the accident; that she hurt her neck and left knee; that the discomfort lasted about four days; that she is fully recovered, and has no after effects.

Carmen Scudiero, a brother of the decedent, testified that Ralph Scudiero had four children, Jacquelyn, Janice, Joyce and Judy, and that he was a good father. He first learned of the accident at five minutes to twelve on February 10 when he was called to the hospital. He went to the scene of the accident about nine o'clock the following morning, and testified that a photograph of the area of the highway at the west end of Bailey's Used Car Lot correctly portrayed its condition at that time, with ruts and water on the road. He drove over the area, and his wheel hit the ruts described above.

Joseph Scudiero, also a brother of the decedent, testified that he had occasion to travel on Lake Street to get to and from his work, and used the highway in question daily; that he had noticed the conditions portrayed in the photograph at least two or three weeks before the accident occurred; that he did notice State of Illinois trucks maintaining the road before February 10, 1965; that he had hit the ruts, and bounced or swerved; that he never saw any signs warning him of rough pavement; and, that

sometimes he didn't see the ruts, because they were full of water.

Ralph Louis Blust testified that he lived about four blocks from Bill Bailey's; that he is a volunteer fireman with the Addison Fire Department; that he left the fire house, located two blocks east of Addison Road on Lake Street about 10:15 or 10:20 on the night of the accident; that the condition of the pavement was good except for a stretch in front of Bill Bailey's, which was "very rough, very bad"; that the speed limit at or near Bill Bailey's is 45 miles per hour; that in some instances the condition of the highway was worse than portrayed in the photograph because of deep ruts, which have water in them; that the conditions were as portrayed at least a week or two before February 10, 1965; that he came upon the accident before the ambulances arrived; that he did not notice any signs warning of the condition of the highway, barricades, or detour signs; that he had driven over the bumps in the past, and tried to straddle them; and, that this was a highly traveled road.

Larry Herbord testified that he was a police officer for the Village of Addison; that he did not investigate the accident in question; that he was very familiar with the general condition of the highway in question as it existed on February 10, 1965; that the condition of the road was worse than that shown in the photographs; that there was one very bad hole; that the conditions had existed for a couple of weeks; that there were no warning signs displayed, which would make a motorist aware of the highway; that the lighting at the scene of the occurrence was darker than it was just east of it; that the general condition of the highway was good from at least a mile east of the area in question; and, that he

traveled over the same spot every night, and the area "jarred the living hell" out of his vehicle.

Dorrence Little testified that he was traveling east on Lake Street in the far right lane at about 50 miles per hour when he saw an oncoming vehicle swerve into his lane, apparently regain control, and then swerve into his lane again; that he struck the other car on the driver's side, after trying to run off the road into a parking lot to avoid hitting the car; that he drives on the highway daily; that the lane going west was worse than the other; that from time to time the bad spots are repaired, but eventually became bad again; that the weather was good, but there might have been frost at the spot; that he had never observed warning signs in the area with respect to the condition of the highway; that he did observe patchwork being done; and, that the ruts and holes shown in the photograph were there for at least three days prior to February 10, 1965.

Nicholas Steffan testified that he was employed by the State of Illinois as a maintenance field engineer for the Division of Highways, and is in charge of the highways in DuPage County; that in February, snow, thaw and rain caused chuck holes in many of the roads in DuPage County; that the highways get resurfaced when funds are available; that Lake Street was resurfaced in 1953; that, prior to February 10, 1965, a request was made from the Department for resurfacing in November, 1964; that the money has to be alloted for the next season's program; that during the winter the holes are patched with a cold mix, which is temporary in nature; that time cards show cold patching was done on Lake Street on February 10; that cold and rain, freezing and thawing take the patches out, and the "next day we patch

them again until such time we can put a permanent patch in''; that the highways are inspected every day; that he personally inspects the highway, and has a supervisor and two foremen inspecting highways; that a maintenance man in each section maintains a particular section of the road; that the first thing the maintenance men do is ride their section of the road to ascertain the filling of holes, weather conditions, and debris on the highways; that he did ride Lake Street on February 9; that he did request that Lake Street be resurfaced in 1964 and 1962; that Lake Street was high on priority for reconstruction, because of the amount of traffic it had in 1962, 1963, 1964 and 1965, but no funds were available; that a permanent patching job was done on Lake Street about three years prior; that three men maintain the area, and are on the road every day; that every two miles there is a sign posted ''rough pavement'' as a warning to motorists; that he could not say where the signs were posted in relation to the accident; that the cold mix at times does not last an hour, because of the heavy speed of traffic, and the tires spinning it right out; that the cold patches would last about 12 hours or less on the day of the accident; that the westbound traffic is heavy at night with freezing and thawing and with water getting underneath, the cold mix might come out right after rush hour; and, that the presence of water indicated that the area in front of Bill Bailey's was a low area, or the area somewhere around it was not drained.

Walter Kehoe testified that he was employed in the capacity of maintenance foreman in the Northeast Section of DuPage County; that he had charge of that section of Lake Street, or U.S. No. 20, between Addison Road and U.S. Route No. 53; that he had a crew of three men working on Lake Street; that he traveled over the various

highways in his district not less than two times per day; that all crews make a trip on the highway in the morning to check for chuckholes and debris; that time cards are kept of the work; that time cards showed "patching holes" on Lake Street between Addison and Route No. 53 on February 10, 1965; that he drove over the highway on February 10, and there were some holes; that the photograph admitted into evidence shows the condition of the highway as it existed when he saw it on February 10, 1965, with peeling of blacktop caused by water and hydraulic pressure pushing it up; that the center lane had a few holes; that after patchwork was done the holes would be level with the road; that the depressions were four to six inches deep; that it would be easy for patchwork to be done one day, and pop out the following day because of water and heavy trucks; that there were "rough pavement" warning signs every two miles, and, "there would have to be one" in front of Bill Bailey's, because it would be two miles from Walnut Street; that the three men crew would travel about twelve miles of four lane highway; that the records do not show the exact place of the patchwork; that he did not see a sign warning of icy conditions or bad pavement in the photograph; and, that the spot near Bailey's was a low level area, and would accumulate water or condensation.

Chester Galus testified that he was employed by the State of Illinois as a highway section man; that he had charge of Lake Street on February 10, 1965 and the area in question; that the total area of approximately 10½ miles of four line pavement is inspected once in the morning and once in the afternoon for holes, ruts, abrasions, dead animals, debris and wood; that, if holes or ruts are spotted, they get the material to fix it; that they used cold pack to fill the holes and ruts, with some lasting for

indefinite periods and others coming out in 13 or 14 hours; that there were signs warning of rough pavement in the area in question, and the one westbound would be slightly under a mile from Bill Bailey's; that the general condition of the highway immediately adjacent to Bill Bailey's Car Lot was in fair condition; that "patch holes" on a time card is different from "patching", whch means taking out the top section with an air hammer, cleaning it out, and making a real patch; that he did not remember if he did patchwork in front of Bill Bailey's on February 10; that after the accident it was not in bad condition; that it would have taken about 45 minutes to remedy the condition portrayed in the photograph; that, if it is impossible to repair properly, barricades and flashers are put up; that, if he had time, and had seen the conditions portrayed on the photograph, he would have followed the procedure with the air hammer, or cleaned out the hole with a pick by hand and made the patch. Mr. Galus further testified that, if everything is not repaired, "we work overtime until we do repair it. If it's impossible to repair it properly, barricades and flashers are put up." Mr. Galus also stated that if he passed over a section of the highway, which looked like the photograph in evidence, he would "definitely not" leave for the night leaving the section of the highway in that condition.

Although the State is not an insurer of all who travel on its highways, it does have an obligation to keep its highways in a reasonably safe condition for motorists traveling over them. If the highways are in a dangerously defective condition, the State is negligent if it does not notify the public of such condition. *Mitchell* vs. *State of Illinois,* 24 C.C.R. 61; *Sisco* vs. *State of Illinois,* 24 C.C.R. 306.

The Court must conclude that respondent was negligent in its failure to maintain U.S. Route No. 20, or Lake Street, in a reasonably safe condition for motorists, or, as an alternative, post adequate warning signs or signals. Without exception, all witnesses for claimants and respondent testified that the area of the highway on which the accident occurred, specifically the westbound lane in front of the west end of the used car lot, which was located at 19 West 326 Lake Street, Addison, Du Page County, was filled with ruts and holes, and often covered with water, which acted to conceal some of the defects. All of respondent's witnesses testified that they knew of the condition of the area in question. Although claimants' witnesses testified that they saw no warning signs, respondent's witnesses stated that there were rough pavement signs every two miles. This hardly seems adequate when there was no sign at the spot, which all parties stated was one of the worst. Respondent could have exercised reasonable care in maintaining the area by doing the patching job, which took 45 minutes instead of the "patch holes" job, which was known not to last in the heavy traffic, which occurred daily. Respondent's witness, Mr. Galus, also testified that it would have been possible to put up barricades and flashers, if an area is impossible to repair. The condition in question had lasted at least three days to two weeks before the accident. Respondent, through its daily inspections, knew or should have known of the dangerous condition of the road.

There was no evidence introduced to show that the deceased or claimants exercised anything but due care for their safety, or that the cause of the accident was other than the condition of the highway. Respondent was guilty of negligence, which was the proximate cause of the ac-

cident, resulting in the death of Ralph Scudiero and the injuries of the other claimants.

The evidence further revealed that Ralph Scudiero was 47 years old at the time of his death; that he had been married to Elaine Scudiero for 16 years; that four children were born of the marriage, Janice, Jacquelyn, Joyce and Judith; that he was employed by Ray Roberts Steak House in West Chicago, and earned a net amount of $110.00, all of which he contributed to the support of his family; and, that he was in good health.

The evidence further shows that on February 10, 1965, Elaine Scudiero was employed by the Roselle Snack shop as a waitress earning $40 to $45 per week. As a result of the accident, she sustained a fracture of the fibula, fracture of the left elbow, lacerations of the scalp and leg. She remained in the hospital for eight days, and was on crutches about five weeks. She was disabled until April 18, 1965.

Dr. James Boyd, who treated Mrs. Scudiero at the time of the accident, stated that there may be some arthritis developing in the elbow region, and that she will have pain in the left leg related to the fracture. He also treated Janice Scudiero who had multiple abrasions of the left lower leg and laceration of the chin, multiple contusions, fracture of the left fibula, with a residual fracture of the fibia and a scar of the chin. Janice remained in the hospital six days and on crutches for a month.

Joyce Scudiero had a cut on her leg, a bruise on her arm, a cut on her head and scratches over her face. She has completely recovered, and never saw a doctor after she left the hospital. Judith Scudiero had discomfort of the neck and left knee for about four days.

468

Claimant Elaine Scudiero is hereby awarded the sum of $25,000.00, as Administratrix of the Estate of Ralph Scudiero, deceased; Claimant, Elaine Scudiero, individually, is hereby awarded the sum of $7,500.00; Janice Scudiero, a minor, is hereby awarded the sum of $2,250.00; Joyce Scudiero, a minor, is hereby awarded the sum of $250.00; and Judith Scudiero, a minor, is hereby awarded the sum of $150.00.